IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE ESCOBEDO SALAZAR,

    Petitioner,                          No. CIV S-09-3585 LKK CHS

    vs.

FRANK X. CHAVEZ, Warden,

    Respondent.

FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Jose Escobedo Salazar, a state prisoner, proceeds pro se with an amended petition for writ of habeas corpus [doc #5] pursuant to 28 U.S.C. § 2254. He challenges his convictions in the Sacramento County Superior Court, case number 06F05583.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The California Court of Appeal summarized the facts of Salazar's offenses of conviction in an unpublished opinion on direct appeal:

> The victims, 16 and 20 years old at the time of trial, testified that while living at home with defendant, their mother, and other siblings, defendant molested them. Specifically, J.S. testified that when she was five and six years old, defendant repeatedly French-kissed her and put his hands and tongue on her vagina. Several

1

times, defendant told her not to tell her mother. T.S. testified that when she was in the fourth to sixth grades, defendant repeatedly French-kissed her and groped her buttocks. Neither girl told the other of the molestations, but J.S. later learned T.S. had complained to their aunt about defendant's sexual abuse of T.S.

When J.S. was 15 years old, she began to suffer from depression and had problems with her parents; she believed the problems were caused by defendant's sexual abuse of her. One day, after having an argument with defendant, J.S. called T.S. and asked to meet her at their grandmother's home. There, J.S. told T.S. of the molestations. The girls then told the aunt, and the matter was reported to the sheriff's department.

After interviewing both victims, a detective set up a pretext telephone call from J.S. to defendant. The call was conducted in Spanish, was about 20 minutes long, and was monitored by Detective Juan Hidalgo, who was fluent in Spanish. People's exhibit No. 3 is a CD of the entire call, and People's exhibit No. 4 is a CD of the last minute of exhibit No. 3, which Hidalgo described as being very emotional for both defendant and J.S.

Detective Hidalgo prepared a written summary of People's exhibit No. 3 in English. Using this summary, he testified about the content of the call. It began with J.S. telling defendant she was having nightmares about the two of them and wanted to talk with him about what had happened when she was little and why it had happened. Defendant told her that he loved her, that she could call him whenever she wanted, and that he wanted her forgiveness if he had "offended" her. J.S. asked if "it" happened because he was having problems with "mom." Defendant replied he was "sorry" but "[t]here are things that happened that I just don't know." When J.S. repeated that she did not "understand why [he] did that to [her]," because she was his "daughter," defendant replied, "I'm trying to tell you it's a problem that one has."

J.S. finally became more specific during the conversation, asking defendant "[w]hy couldn't [he] do it with a prostitute" rather than with his "own daughters." Defendant asked for forgiveness from J.S., and she agreed if he promised never again to harm her emotionally, including "[n]othing sexual." Defendant "promise[d]" and said, "I have learned my lesson with what has happened over the past few days. I know the big errors that I committed. I ask for your forgiveness and forgiveness from your sisters."

Exhibit No. 4 was played for the jury without interruption. It was played again, but in segments, with the prosecutor asking Detective Hidalgo for the English translation of what was being said. The People then rested their case.

/////

> Several of defendant's relatives testified they had spent time with defendant's family and had never seen defendant act inappropriately with his daughters.
>
> Defendant testified and denied having molested his daughters. He admitted kissing them in a playful manner, but said it was never anything sexual. He explained that he was very emotional during the pretext call and was apologizing for arguments he had with the girls that caused them to move out of the house. During cross-examination of defendant, exhibit No. 4 was again played in its entirety.
>
> Exhibit No. 4 was also played twice for the jury during the prosecutor's closing argument.

*People v. Salazar*, No. L 2217759, 2009 WL 2217759, slip op. at 1 -2 (Cal. App. 3rd Dist. 2009).

The jury found Salazar guilty of six counts of lewd and lascivious acts on a child under 14 and two counts of attempting the same offense. The court sentenced him to a determinate prison term of 18 years. The California Court of Appeal, Third District, affirmed the conviction and sentence and the California Supreme Court denied his petition for review.

### III.  GROUNDS FOR RELIEF

This matter proceeds on Salazar's amended petition filed on February 11, 2010, in which he asserts two grounds for relief:

A. The trial court denied him his right to due process and a fair trial by (1) permitting the prosecutor to play only a small portion of the pretext call; (2) letting a "biased interpreter" explain parts of the call; and (3) allowing the prosecutor to argue the "emotion" of the call; and

B. Trial counsel rendered ineffective assistance of counsel at trial in connection with the prosecutor's use of the pretext call during trial.[1]

/////

/////

---

[1] Pursuant to the March 22, 2011 order adopting the prior assigned magistrate judge's findings and recommendations filed on February 1, 2011, Salazar's ineffective assistance claim is to be construed narrowly as challenging only "trial counsel's actions or inactions concerning the pretext call," as any additional intended allegations of ineffective assistance were not properly exhausted in state court.

3

IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under the AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919. The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

/////

/////

V.   DISCUSSION

A.   Due Process

Salazar claims the trial court denied him his right to due process and a fair trial by (1) permitting the prosecutor to play only a small portion of the pretext call; (2) letting Detective Hidalgo, a "biased interpreter," explain parts of the call; and (3) allowing the prosecutor to make argument about the "emotion" of the call.

Salazar presented this claim to the California Court of Appeal on direct review and to the California Supreme Court in a petition for review.  In the last reasoned state court decision applicable to this claim, the state court did not reach the merits because it found the claim was not properly preserved for appeal due to the lack of contemporaneous objections to the prosecutor's challenged conduct at trial:

> Although a CD of the entire pretext call was introduced into evidence as People's exhibit No. 3, it was not played for the jury. And although Detective Hidalgo prepared a summary of the entire call, that summary was not introduced into evidence. Only the CD of a portion of the call (People's exhibit No. 4) was played to the jury, and Hidalgo both translated it into English during his testimony and described the "emotion that could be heard." The record also reflects that a written transcript of People's exhibit No. 4 was provided to the jury.
>
> Defendant contends his "right to due process and a fair trial" was violated when the trial court "allowed [Detective] Hidalgo, a biased and unqualified translator, to testify about the contents of [the pretext] phone call and by playing only the portion on which [defendant] was crying," thus allowing the prosecutor to use only a portion of the call "to urge jurors to find [defendant] guilty." (Citing Evid. Code, § 356 [when part of a conversation is introduced into evidence by one party, "the whole on the same subject may be inquired into by an adverse party" and, when it is necessary to make the portion of the conversation understood, the whole "may also be given in evidence"].)
>
> In defendant's view, this not only allowed jurors to take the portion "out of context" and to consider a recording that, according to him, "was incomplete, inaccurate and unintelligible in substantial part," it deprived him of the right to a competent and unbiased translator and permitted the prosecutor to "argu[e] emotion without supporting facts." As we will explain, defendant's arguments are not cognizable in this appeal.

To preserve an issue for review on appeal, a defendant must interpose a specific and timely objection in the trial court on the same ground that he asserts on appeal. (*People v. Partida* (2005) 37 Cal.4th 428, 434.) This "requirement is necessary in criminal cases because a 'contrary rule would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'" (*Ibid.,* citing *People v. Rogers* (1978) 21 Cal.3d 542, 548.)

Here, the defense did not raise in the trial court any of the objections he now raises on appeal. Thus, his due process and fair trial argument is forfeited. (*People v. Partida, supra,* 37 Cal.4th at p. 434.)

Defendant suggests various reasons why his contention should not be deemed forfeited.

First, relying on *People v. Aguilar* (1984) 35 Cal.3d 785 (hereafter *Aguilar*), he claims "the right to an interpreter can only [be] waived by the defendant," a waiver that "must affirmatively appear on the record." The point is of no help to him.

In *Aguilar,* a Spanish-speaking interpreter was appointed for the defendant. (*Aguilar, supra,* 35 Cal.3d at p. 789.) During the trial, for the "benefit of the court and jury" and with defense counsel's acquiescence, but without defendant being consulted, the court "borrowed" the interpreter to function as an interpreter for two Spanish-speaking witnesses who were testifying against the defendant. (*Ibid.*) That procedure left the defendant without an interpreter for a portion of the trial, thereby violating his right under article I, section 14 of the California Constitution, which provides that "'[a] person unable to understand English who is charged with a crime has a right to an interpreter *throughout the proceedings.*'" (*Id.* at p. 790.) Absent the defendant's personal waiver of his right to the interpreter, reversal was required. (*Id.* at pp. 794-795.)

Here, defendant was appointed an interpreter who remained with him throughout the trial. Consequently, *Aguilar* is not on point.

Second, defendant asserts that we have discretion to decide the issue even though there was no objection in the trial court, and urges us to so exercise it. We decline the invitation for reasons stated in *People v. Romero* (2008) 44 Cal.4th 386: "'"[A]s a general rule, 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' [Citations.] This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights. [Citations.]"' [Citation.] The reason for this rule is to allow errors to be corrected by the trial

6

> court and to prevent gamesmanship by the defense. [Citations.] We see no reason why the general rule of forfeiture should not be applied to ... claims of error relating to interpreters for [ ] witnesses. Here, each of the claimed violations of defendant's rights could easily have been addressed and corrected in the trial court had defendant objected. His failure to do so precludes him from now asserting errors relating to the witness interpreter[ ]." (*Id.* at p. 411.)

*People v. Salazar*, *supra*, slip op. at 2-3.

As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law. *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir. 2001). To be deemed adequate, it must be well established and consistently applied. *Poland v. Stewart*, 169 F.3d 575, 577 (9th Cir. 1999). An exception to the general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

If the state pleads the existence of an independent and adequate state procedural ground as an affirmative defense, the burden shifts to the petitioner to place the adequacy of that procedural rule in issue, as "the scope of the state's burden of proof thereafter will be measured by the specific claims of inadequacy put forth by the petitioner." *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). The state retains the ultimate burden of proving adequacy of the asserted bar. *Id.* at 585-86.

Here, Salazar has offered no argument that the contemporaneous objection rule invoked by the state court was not an independent and adequate basis for its decision, nor has he demonstrated cause for his default or that a miscarriage of justice would result if his claim is not heard. Accordingly, review of his claim regarding the prosecutor's alleged misconduct during

1  argument should be found to be barred. *See generally King v. Lamarque*, 464 F.3d 963, 967
2  (9th Cir. 2006) ("*Bennett* requires the petitioner to 'place [the procedural default] defense in
3  issue" to shift the burden back to the government").  It is noted that the Ninth Circuit has held
4  California's contemporaneous objection rule to be an independent and adequate procedural bar
5  on various occasions, affirming the denial of federal petitions on grounds of procedural default
6  where no objection was made at trial.  *E.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th
7  Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (jury instruction claim
8  procedurally barred for failure to object); *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002)
9  (citing *Garrison v. McCarthy*, 653 F.2d 374, 377 (9th Cir. 1981); *Vansickel v. White*, 166 F.3d
10 953, 957 (9th Cir. 1999); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999) (declining to
11 review various prosecutorial misconduct claims as procedurally barred for failure to
12 contemporaneously object).

13         In any event, this claim would fail on the merits even if it were not procedurally
14 barred.  To the extent Salazar challenges the admission of Exhibit 3 at trial and the interpreter's
15 explanation thereof, that is a question of state evidentiary law for which habeas corpus relief does
16 not generally lie.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Crane v. Kentucky*, 476
17 U.S. 683, 689 (1986) ("We acknowledge also our traditional reluctance to impose constitutional
18 constraints on ordinary evidence rulings by state trial courts."); *Henry v. Kernan*, 197 F.3d 1021,
19 1031 (9th Cir. 1999), cert. denied, 528 U.S. 1198 (2000).  A state court's evidentiary ruling, even
20 if erroneous, is grounds for federal habeas relief only if it rendered the state proceedings so
21 fundamentally unfair as to violate due process.  *Drayden v. White*, 232 F.3d 704, 710 (9th Cir.
22 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d
23 918, 919 (9th Cir. 1991).  The erroneous admission of evidence violates due process only if
24 "there are no permissible inferences the jury may draw from the evidence." *Jammal*, 926 F.2d at
25 920.  The challenged evidence must "be of such quality as necessarily prevents a fair trial." *Id*.
26 (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1462 (9th Cir. 1986) (quoting *Lisenba v.*

*California*, 314 U.S. 219, 236 (1941))).

Evidence at trial which remains undisputed here established that the recording itself was clear and intelligible and that Hidalgo's testimony based thereon was accurate. Hidalgo testified that a pretext call is a common investigative technique in which a person confronts another person on the telephone in an effort to obtain the truth while a recording device records the call and allows a detective to listen simultaneously. (Reporter's Transcript ("RT") at 307-08, 312.)  The pre-text call between J.S. and Salazar was clear and understandable; Hidalgo listened to the entire conversation and summarized it truthfully, accurately, and to the best of his ability while it was still fresh in his memory.  (RT at 310-11.)  Salazar's contention that Hidalgo should not have been permitted to explain parts of the call because he was "biased" is without support in the record.

Salazar cites no federal constitutional precedent regarding the evidentiary admission of partial recordings of pretext calls or translations of such recordings by interpreters at trial.  Under California law, a party may introduce into evidence a portion of a recorded conversation. *See* Cal. Evid. Code § 356.  Section 356 provides, in relevant part: "Where part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party[.]" As set forth, in this case the defense did not seek to admit the entire recording and so the evidentiary admission of the partial recording did not render the trial fundamentally unfair.

Pursuant to the parties' agreement, the jury was not provided with a transcript of the recording.  (RT at 345.)  The fact that some or all of the jurors did not understand Spanish did not render the conversation unintelligible.  As set forth, Exhibit 4 was played multiple times at trial with no objection from the defense that it was unintelligible.

Salazar also fails to support his complaint that the prosecutor was allowed to argue the "emotion" of the call with relevant federal precedent.  The prosecutor's argument was based on Hidalgo's testimony that the last minute of the telephone call was very emotional and

that both J.S. and Salazar were crying.  (RT at 344.)  Salazar fails to demonstrate that this was improper argument.

In sum, Salazar fails to demonstrate that his trial was rendered fundamentally unfair by the admission of Exhibit 4, Hidalgo's accompanying testimony, or the prosecutor's related argument.  Salazar further fails to demonstrate that he suffered prejudice.  This claim is conclusory and unsupported by sufficient facts.

B.   Ineffective Assistance

Salazar further claims trial counsel rendered ineffective assistance by failing to object to the admission of Exhibit 4 at trial.

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 687 & 697.  Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id*.

"Surmounting *Strickland's* high bar is never an easy task," and review under the AEDPA is doubly deferential.  *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).  The relevant question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.  *Harrington*, 131 S. Ct. at 788.

Presented with this claim on direct review, the California Court of Appeal held:

> [D]efendant is unable to show either deficient performance by his trial counsel or prejudice from counsel's failure to raise an objection in the trial court on the grounds now asserted on appeal. This is so because, other than the testimony of Detective Hidalgo, the record on appeal does not reveal the content of the portion of the pretext call omitted in exhibit No. 4-content that may well have been unfavorable, not helpful, to defendant. And, absent evidence

> of the content of the entire call, defendant is unable to show that it was necessary to understand the part contained in People's exhibit No. 4. Defendant also has not shown Hidalgo was inaccurate in any aspect of his translation. Indeed, defendant, who speaks Spanish and had access to the entire call, would have known if the translation by Hidalgo was inaccurate, yet he voiced no such complaint. The mere fact Hidalgo was the detective who investigated the crimes does not, without more, suggest that he was biased to distort the content of the call. As to the prosecutor's argument about the emotion displayed by defendant during the last minute of the pretext call, as evidenced by exhibit No. 4, this was highly relevant. It was a fair comment on the evidence to argue that defendant's crying and sobbing were inconsistent with his being simply upset about arguing with his daughters, as defendant claimed, and instead that his emotions revealed the shame and sorrow he was experiencing for having molested them. In sum, defendant has failed to carry his burden of showing ineffective assistance.

*People v. Salazar*, *supra*, at 3 -4.

The state court's rejection of the ineffective assistance claim in this manner was consistent with, and a reasonable application of clearly established federal law. For the reasons set forth by the state court, a reasonable argument certainly exists that trial counsel satisfied *Strickland's* deferential standard. Salazar further fails to demonstrate that he suffered actual prejudice from counsel's alleged failure to object. No relief is available for either of his claims.

## VI.  CONCLUSION

For the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be denied; and

2. A certificate of appealability not issue.

11

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: December 28, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE